[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Polk,* Slip Opinion No. 2017-Ohio-2735.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-2735

THE STATE OF OHIO, APPELLANT, v. POLK, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Polk,* Slip Opinion No. 2017-Ohio-2735.]

*Fourth Amendment—Search and seizure—High school's protocol requiring searches of unattended book bags furthers compelling governmental interest in protecting public-school students from physical harm—School employees' warrantless search of unattended book bag pursuant to protocol was limited to furthering compelling governmental interest and was reasonable—Court of appeals' judgment affirming trial court's grant of suppression motion reversed and cause remanded.*

(No. 2016-0271—Submitted March 1, 2017—Decided May 11, 2017.)

APPEAL from the Court of Appeals for Franklin County,

No. 14AP-787, 2016-Ohio-28.

_____

**KENNEDY, J.**

## I. INTRODUCTION

**{¶ 1}** In this discretionary appeal, we decide whether the Tenth District Court of Appeals erred in affirming the judgment of the Franklin County Court of Common Pleas granting a defense motion to suppress evidence seized during the warrantless search of an unattended book bag. The search was conducted by a school employee responsible for students' safety and security and the school's principal to determine who owned the bag and to ensure that its contents were not dangerous.

**{¶ 2}** Based on the facts of this case, we hold that the school's protocol requiring searches of unattended book bags—to determine ownership and whether the contents are dangerous—furthers the compelling governmental interest in protecting public-school students from physical harm. We further hold that the school employees' search of the unattended book bag belonging to appellee, Whetstone High School student Joshua Polk, was limited to furthering that compelling governmental interest and was reasonable under the Fourth Amendment to the United States Constitution. Therefore, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

## II. FACTS AND PROCEDURAL HISTORY

**{¶ 3}** Robert Lindsey, who is not a police officer, is employed as a safety and security resource coordinator by the Columbus City School District. His job is to ensure that students are safe, and it requires him to undertake tasks such as running fire drills and carrying out security checks of school buildings, the students, and their lockers. At a hearing on Polk's suppression motion, Lindsey testified that Columbus's Whetstone High School has an unwritten protocol requiring searches of "unattended" book bags to identify their owners and to ensure that their contents are not dangerous. Lindsey testified that the protocol was based on "current events

and safety concerns," "what's going on with America," and studies indicating that an "[u]nattended bag * * * is a priority." Lindsey estimated that he searches 15 to 20 bags a day, either because a bag is suspected to contain contraband or because it has been left unattended.

{¶ 4} Lindsey testified that Whetstone bus drivers perform walk-throughs of the buses after their routes are complete to ensure that no student has remained on the bus. On February 5, 2013, while Lindsey was on duty at Whetstone, a bus driver found a book bag during his walk-through and gave it to Lindsey. Lindsey testified that it was a typical book bag carried by Whetstone students. He opened the bag enough to discern papers, notebooks, a binder, and "stuff like that." One of the papers had Polk's name on it. Recalling a rumor that Polk was possibly in a gang, Lindsey immediately took the bag to Whetstone's principal, a Mr. Barrett. Together they emptied Polk's bag of its contents—which, Lindsey testified, he would have done regardless of the rumor that Polk may have been in a gang because that was the protocol. Upon emptying the bag, Lindsey and Barrett discovered bullets, which Lindsey had not noticed when he initially opened the bag after receiving it from the bus driver. Barrett then notified a police officer.

{¶ 5} Lindsey, Barrett, and the police officer determined Polk's location in the school and went to find him. When they found Polk walking in a crowded hallway, they moved him into another hallway away from other students. The police officer then incapacitated Polk by placing him in a hold and instructed Lindsey to search a book bag that Polk was carrying. Lindsey found a handgun in a side compartment of that bag.

{¶ 6} The state charged Polk with one count of conveyance or possession of a deadly weapon or dangerous ordnance in a school-safety zone. Polk filed a motion to suppress the bullets and the handgun, arguing that the searches of both book bags were unreasonable under the Fourth Amendment and that regardless of the legality of the search of the bag that Polk was found carrying, the handgun

should be excluded as fruit of the poisonous tree. The state filed a memorandum in opposition.

**{¶ 7}** The trial court granted Polk's motion to suppress. The court first determined that Lindsey's initial search of the unattended bag—to identify its owner and to ensure that its contents were not dangerous—was reasonable. The court further determined, however, that the "second and more intrusive search" of the unattended bag, conducted by Lindsey and Principal Barrett, was unreasonable because it was "conducted solely based on the identity and reputation of the owner," which did not constitute reasonable grounds for suspecting a violation of school rules or the law.

**{¶ 8}** In a two-to-one decision, the court of appeals affirmed the trial court's judgment, essentially adopting the trial court's reasoning and adding that the trial court had correctly suppressed the handgun as fruit of the poisonous tree. 2016-Ohio-28, 57 N.E.3d 318, ¶ 12-19. The dissenting judge noted that "when considering the second search, the majority applied the test outlined in [*New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)] for the *initial* search[,]" i.e., whether Lindsay " 'had "reasonable grounds" for suspecting that the search would turn up evidence that [Polk] had violated or was violating either school rules or the law.' " (Emphasis added.) 2016-Ohio-28, 57 N.E.3d 318, at ¶ 33 (Dorrian, P.J., concurring and dissenting), quoting the trial court's opinion. The dissenting judge went on to conclude that "the [trial] court's question regarding the second search should have been whether the measures adopted [by the school] were reasonably related to the objectives of the initial search (safety and identification) and whether the search was not excessively intrusive." *Id.* at ¶ 34.

**{¶ 9}** We accepted the state's discretionary appeal, in which it asserts the following three propositions of law:

(1) A search is constitutional if it complies with a public school's reasonable search protocol. The subjective motive of the public-school employee performing the search is irrelevant.

(2) The sole purpose of the federal exclusionary rule is to deter police misconduct. As a result, the exclusionary rule does not apply to searches by public-school employees.

(3) Suppression is proper only if the deterrence benefits of suppression outweigh its substantial social costs.

*See* 145 Ohio St.3d 1470, 2016-Ohio-3028, 49 N.E.3d 1313. Because we conclude that Whetstone's search protocol is reasonable and that Lindsey and Principal Barrett's search complied with it, it is not necessary to address either the relevance of the subjective motive raised in the state's first proposition of law or the issues raised in the state's second and third propositions of law.

{¶ 10} The state argues that because a public school is a "special need" setting in which students have a limited expectation of privacy and because public schools have a compelling governmental interest in protecting student safety, the search of the book bag that Polk left on the bus was reasonable because it complied with Whetstone's protocol for searching unattended book bags and because the protocol is reasonable.

{¶ 11} In response, Polk notes that while a student in a public-school setting has a diminished expectation of privacy in an unattended book bag, that expectation of privacy is not nonexistent. Polk contends that while Lindsey possessed authority to inspect Polk's unattended bag to identify its owner and to determine whether the contents were dangerous, Lindsey's initial search of the bag satisfied these objectives. Therefore, Polk argues, the "second, more-intrusive investigatory search" conducted by Lindsey and Barrett violated the Fourth Amendment.

## III. ANALYSIS

### A. "Special Needs" Searches Not Based on Individualized Suspicion

{¶ 12} The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." "To be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing." *Chandler v. Miller*, 520 U.S. 305, 313, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997), citing *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652-653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). "But particularized exceptions to the main rule are sometimes warranted based on 'special needs, beyond the normal need for law enforcement.' " *Id.*, quoting *Skinner v. Ry. Labor Executives' Assn.*, 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). "When such 'special needs'—concerns other than crime detection—are alleged in justification of a Fourth Amendment intrusion, courts must undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties." *Id.* at 314. And " '[i]n limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion.' " *Id.*, quoting *Skinner* at 624.

### B. Permissibility of Warrantless Searches in Special-Needs Settings

{¶ 13} In *T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720, the United States Supreme Court first upheld a warrantless search in a special-needs setting. *Ferguson v. Charleston*, 532 U.S. 67, 74, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001), fn. 7. "[U]nder *T.L.O.*, the Supreme Court has moved away from a rule-based search and seizure jurisprudence toward a case-by-case method that will often turn on a careful and meticulous analysis of the facts of the case." *State v. Lindsey*, 881 N.W.2d 411, 425 (Iowa 2016).

**{¶ 14}** In *T.L.O.*, a teacher, upon discovering a student smoking (which was against school rules), took the student to the principal's office. When the student denied that she had been smoking, the principal demanded her purse, opened it, and discovered cigarettes and rolling papers associated with marijuana use. The principal then searched the rest of the student's purse, discovering marijuana, drug paraphernalia, and other incriminating evidence.

**{¶ 15}** The state filed delinquency charges against the student, who moved to suppress the evidence found in her purse. The juvenile court denied the motion to suppress, finding that there was reasonable suspicion to search the purse for cigarettes and that once the purse was open, the marijuana could be seized under the plain-view doctrine.

**{¶ 16}** The juvenile was adjudicated delinquent. The court of appeals found no violation of the Fourth Amendment but vacated the judgment of delinquency on other grounds. The student appealed the Fourth Amendment ruling, and the New Jersey Supreme Court held that the search was unreasonable and ordered that the evidence be suppressed.

**{¶ 17}** The United States Supreme Court granted the state's petition for certiorari to determine whether the exclusionary rule applied, but that issue became moot when the court determined that the Fourth Amendment applied to searches of students conducted by school officials and that the search employed in *T.L.O.* was reasonable. 469 U.S. at 332, 105 S.Ct. 733, 83 L.Ed.2d 720.

**{¶ 18}** Recognizing that " '[t]he basic purpose of [the Fourth Amendment] * * * is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials,' " the court in *T.L.O.* held that "[i]n carrying out searches and other disciplinary functions pursuant to [school disciplinary] policies, school officials act as representatives of the State, not merely as surrogates for the parents, and they cannot claim the parents' immunity from the strictures of

the Fourth Amendment." *Id.* at 335-337, quoting *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

{¶ 19} In determining whether the principal's warrantless search was reasonable under the Fourth Amendment, the court stated that "[t]he determination of the standard of reasonableness governing any specific class of searches requires 'balancing the need to search against the invasion which the search entails.' " *Id.* at 337, quoting *Camara* at 536-537. Accordingly, the court balanced a student's privacy interest in bringing certain types of property to school (e.g., school supplies, keys, money, and personal-hygiene items as well as highly personal items like photos and diaries) against "the substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds." *Id.* at 339. The court recognized that

> "[e]vents calling for discipline are frequent occurrences and sometimes require immediate, effective action." * * * Accordingly, we have recognized that maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship.

*Id.* at 339-340, quoting *Goss v. Lopez*, 419 U.S. 565, 580, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), and citing *Goss* at 582-523 and *Ingraham v. Wright*, 430 U.S. 651, 680-682, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

{¶ 20} The court explained that in striking a balance between students' expectation of privacy and school officials' "need to maintain an environment in which learning can take place[,] [i]t is evident that the school setting requires some easing of restrictions to which searches by public authorities are ordinarily

subject"—namely, the requirements of probable cause and a search warrant. *T.L.O.*, 469 U.S. at 340, 105 S.Ct. 733, 83 L.Ed.2d 720. The court held that the

> substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the *reasonableness, under all the circumstances*, of the search.

(Emphasis added.) *Id.* at 341.

{¶ 21} After *T.L.O.*, the court next examined the issue of warrantless searches in the school context in the form of random drug testing of student-athletes and students who participate in extracurricular activities. *See Acton*, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (upholding random drug testing of student-athlete); *Bd. of Edn. of Indep. School Dist. No. 92 of Pottawatomie Cty. v. Earls*, 536 U.S. 822, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002) (upholding random drug testing of students who participate in certain extracurricular activities). In both cases, the court applied a balancing test appropriate for special-needs searches that are not based on individualized suspicion. Under this balancing test, the court weighs the importance of the government's interest and the efficacy of the search policy in furthering that interest against the nature of the privacy interest involved and the intrusiveness of the search. *Acton* at 664-665; *Earls* at 830-834. In both cases, the court upheld the random drug testing of certain students in light of the government's important interest in deterring drug use by schoolchildren and the students' diminished expectations of privacy.

{¶ 22} Indeed, "while children assuredly do not 'shed their constitutional rights * * * at the schoolhouse gate,' * * * the nature of those rights is what is

appropriate for children in school." (First ellipsis sic.) *Acton* at 655-656, quoting *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). "A student's privacy interest is limited in a public school environment where the State is responsible for maintaining discipline, health, and *safety*." (Emphasis added.) *Earls* at 830-831. And "[s]ecuring order in the school environment sometimes requires that students be subjected to greater controls than those appropriate for adults." *Id.* at 831, citing *T.L.O.* at 350 (Powell, J., concurring).

### C. Whetstone's Search Protocol

**{¶ 23}** As previously noted, in *T.L.O.*, the Supreme Court held that the legality of the warrantless search of a student depends on the search's "reasonableness, under all the circumstances." 469 U.S. at 341, 105 S.Ct. 733, 83 L.Ed.2d 720. The *T.L.O.* reasonableness standard requires that the court first ask whether the search was " 'justified at its inception' "—that is, whether there were "reasonable grounds for suspecting that the search [would] turn up evidence that the student ha[d] violated or [was] violating either the law or the rules of the school." *Id*. at 341-342, quoting *Terry*, 392 U.S. at 20, 88 S.Ct. 1868, 20 L.Ed.2d 889.

**{¶ 24}** The search in *T.L.O.* was based on individualized suspicion of wrongdoing. *Id.* at 344-345. In this case, however, no violation was suspected at the time of Lindsey and Principal Barrett's search of Polk's unattended bag. We are asked to determine the reasonableness of Whetstone's search protocol as applied to this special-needs search. Accordingly, in analyzing Whetstone's search protocol, we find instructive the balancing test established by the Supreme Court in *Acton* and *Earls*, which weighs the importance of the government's interest and the efficacy of the search policy in meeting that interest against the nature of the privacy interest involved and the intrusiveness of the search.

*1. Importance of governmental interest and efficacy of searching unattended book bags*

**{¶ 25}** Schools have an obligation to keep their students safe. *Earls*, 536 U.S. at 830, 122 S.Ct. 2559, 153 L.Ed.2d 735. "Columbine, Virginia Tech University, and now Sandy Hook underscore a fundamental policy change that has taken place in our schools. We now pursue a new fundamental value in our schools: security." Demitchell, *Locked Down & Armed: Security Responses to Violence in Our Schools*, 13 Conn.Pub.Int.L.J. 275, 281 (2014). The United States Department of Homeland Security's "See Something Say Something" website warns that persons should be suspicious of "abandoned" items like luggage. *See* http://www.nationalterroralert.com/suspicious-activity/ (accessed Apr. 17, 2017). Because of "the perceived crisis concerning violence and drug use in the schools, * * * school officials may be remiss if they *do not* find and seize objects which might pose a threat to the well being of other students or school officials." (Emphasis sic.) Ferraraccio, *Metal Detectors in the Public Schools: Fourth Amendment Concerns*, 28 J.L. & Educ. 209, 214 (1999).

**{¶ 26}** These warnings are reflective of school shootings and bomb threats and, more generally, terror attacks that have occurred in this country. Lindsey testified that Whetstone's protocol requiring searches of unattended book bags to identify their owners and to ensure that their contents are not dangerous was born of these concerns. Therefore, Whetstone's protocol supports the compelling governmental interest in public-school safety by helping to ensure that the contents of the bags are not dangerous and in turn that Whetstone's students remain safe from physical harm. *See generally MacWade v. Kelly*, 460 F.3d 260 (2d Cir.2006) (holding that random warrantless searches of subway riders' closed containers supported deterrence of terrorism and were reasonable under the Fourth Amendment). And a complete search of unattended bags is effective in ensuring that they do not contain dangerous contents. See *Earls* at 837-838; *Acton*, 515 U.S.

at 663-664, 115 S.Ct. 2386, 132 L.Ed.2d 564. Anything less than a complete search may miss dangerous items, as we explain later in this opinion.

*2. Students' expectation of privacy in unattended book bags*

**{¶ 27}** The Fourth Amendment protects persons from unreasonable searches only to the extent that they have a reasonable expectation of privacy in the property at issue. *Athens v. Wolf*, 38 Ohio St.2d 237, 240, 313 N.E.2d 405 (1974). "The [Fourth] Amendment does not protect the merely subjective expectation of privacy, but only those 'expectation[s] that society is prepared to recognize as "reasonable." ' " *Oliver v. United States*, 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), quoting *Katz v. United* States, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A person forfeits his reasonable expectation of privacy in his property when he abandons it. *State v. Gould*, 131 Ohio St.3d 179, 2012-Ohio-71, 963 N.E.2d 136, ¶ 30. In the context of the Fourth Amendment, property is abandoned if there is evidence that ownership of it has been relinquished. *Id.*

**{¶ 28}** Whetstone's search protocol requires school officials to search unattended book bags. The dictionary definition of "unattended" is "not watched with care, attentiveness, or accuracy." *Webster's Third New International Dictionary* 2482 (2002). Property left unattended in a public place is usually considered abandoned for purposes of the Fourth Amendment. *See, e.g.*, *United States v. Thomas*, 864 F.2d 843, 846-847 (D.C.Cir.1989) (defendant had no reasonable expectation of privacy in gym bag he left on floor of public hallway in apartment building).

**{¶ 29}** Unlike in *Thomas*, the bag in this case was not left in a public place; it was left on an empty school bus to which the general public had no access. Polk's book bag was not abandoned in the sense that he had relinquished ownership of it. However, leaving a book bag on an empty school bus does diminish the owner's expectation of privacy because school buses transport children to and from school. Children are inquisitive and might be inclined to open an unattended book bag. *See*

*State v. Flynn*, 360 N.W.2d 762, 765 (Iowa 1985) ("the place where seized property is located may be so exposed as to negate any reasonable expectation of privacy"), citing *State v. Kramer*, 231 N.W.2d 874, 879 (Iowa 1975); *People v. Shepherd*, 23 Cal.App.4th 825, 828-829, 28 Cal.Rptr.2d 458 (1994) ("an important consideration in evaluating a privacy interest is whether a person has taken normal precautions to maintain his or her privacy").

**{¶ 30}** The definition of "unattended" is similar to the definition of "lost," which is defined as "gone out of one's possession or control; mislaid." *Webster's Third New International Dictionary* at 1338. Therefore, we also look to case law addressing lost property to assist our analysis. "Property is lost through inadvertence, not intent." *State v. Ching*, 67 Haw. 107, 110, 678 P.2d 1088 (1984). Consequently, a person retains a reasonable expectation of privacy in a lost item, "diminished to the extent that the finder may examine the contents of that item as necessary to determine the rightful owner." *State v. Hamilton*, 67 P.3d 871, ¶ 26 (Mont.2003); *accord Ching* at 110; *State v. Kealey*, 80 Wash.App. 162, 173, 907 P.2d 319 (1995).

**{¶ 31}** One's expectation of privacy in a closed container is further diminished to the extent that there is a need to ensure that its contents are not dangerous to the public. *See Knight v. Commonwealth*, 61 Va.App. 297, 306, 734 S.E.2d 716 (2012); *accord Ching* at 112. Although the above cases involved property found by law-enforcement officials, the rationale justifying the warrantless investigatory search of a closed container applies to school officials who are responsible for the safety of students.

**{¶ 32}** In light of Whetstone's compelling interest in ensuring that unattended book bags do not contain dangerous items and of Polk's greatly diminished expectation of privacy in his unattended bag, we conclude that Whetstone's protocol requiring searches of unattended book bags to identify their

owners and to ensure that their contents are not dangerous is reasonable under the Fourth Amendment.

### *3. Intrusiveness of search of Polk's unattended bag*

**{¶ 33}** It is undisputed that Lindsey conducted a cursory inspection of Polk's unattended book bag that yielded the name of its owner, then shortly thereafter emptied the bag. The trial court found that "it was reasonable for Officer Lindsey to conduct his initial search of the unattended book bag for not only *safety* and *security* purposes, but also to identify the book bag's owner. Having done so, his original purpose for the search was fulfilled." (Emphasis added.) The court then held, however, that Lindsey and Principal Barrett's subsequent emptying of the bag was unreasonable because it was a *new* search motivated solely by the rumor that Polk possibly was a gang member.

**{¶ 34}** The court of appeals deferred to the trial court's finding that Lindsey's cursory search of the unattended bag satisfied the purposes of identifying its owner and ensuring that its contents were not dangerous. We conclude, based on this record, that that finding did not warrant the appellate court's deference.

**{¶ 35}** Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

> "An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."

*State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, quoting *Burnside* at ¶ 8.

**{¶ 36}** The trial court held that Lindsey was justified in searching the unattended bag to identify its owner *and* to ensure that its contents were not dangerous, but it did not explain why merely opening and peering into a book bag full of items would be sufficient to ensure that none of its contents were dangerous. A cursory inspection might easily fail to detect the presence of small but dangerous items. *See Illinois v. Lafayette*, 462 U.S. 640, 646, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) ("Dangerous instrumentalities—such as razor blades, bombs, or weapons—can be concealed in innocent-looking articles taken from the arrestee's possession"). Eric Harris and Dylan Klebold, the two students responsible for the Columbine High School shootings, fashioned explosive devices out of $CO_2$ cartridges called "cricket bombs." http://www.cnn.com/SPECIALS/2000/columbine.cd/Pages/BOMBS_TEXT.htm (accessed Apr. 17, 2017); *see also* https://www.youtube.com/watch?v=fYc8ci9z1nY (accessed Apr. 17, 2017) (showing a cricket-bomb explosion). Cricket bombs are so small that they are likely to evade a cursory search of a book bag, as did the bullets in this case. *See People v. Getman*, 188 Misc.2d 809, 817, 729 N.Y.S.2d 858 (2001) (noting that cricket bombs fit in the pocket of a jacket). Consequently, we conclude that there is not competent, credible evidence to support the trial court's finding that Lindsey's act of opening Polk's unattended bag enough to observe papers, notebooks, and a binder was sufficient to ensure that the bag contained no dangerous items.

**{¶ 37}** Moreover, a reasonable delay in completing the execution of a search does not change the fact that a defendant is "no more imposed upon than he could have been at the time" that the reasons justifying the search first arose. *United States v. Edwards*, 415 U.S. 800, 805, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). And a warrantless search is not unreasonable merely because officials bring the item to

another location before searching it. *United States v. Johns*, 469 U.S. 478, 486, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985).

**{¶ 38}** Lindsey testified that he only peered into Polk's unattended bag when it first came into his possession and that he could see papers, notebooks, and a binder. That cursory review provided him with the name of the bag's owner, but it did not enable him to determine that the contents were not dangerous. That determination could not be made—and execution of Whetstone's reasonable protocol for searching unattended book bags could not be completed—until the bag was emptied.

## IV. CONCLUSION

**{¶ 39}** Whetstone's protocol requiring searches of unattended book bags furthers the compelling governmental interest in protecting public-school students from physical harm. As executed here, the search of Polk's unattended book bag was limited to fulfilling the purposes of Whetstone's search protocol—to identify the bag's owner and to ensure that its contents were not dangerous. Accordingly, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and O'DONNELL, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

———————————

Ron O'Brien, Franklin County Prosecuting Attorney, and Seth L. Gilbert, Assistant Prosecuting Attorney, for appellant.

Yeura R. Venters, Franklin County Public Defender, and Timothy E. Pierce and George M. Schumann, Assistant Public Defenders, for appellee.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, Samuel C. Peterson, Deputy

Solicitor, and Katherine J. Bockbrader, Assistant Attorney General, urging reversal for amicus curiae Ohio Attorney General Michael DeWine.

Bricker & Eckler, L.L.P., and Jennifer M. Flint, urging reversal for amici curiae Ohio School Boards Association, Buckeye Association of School Administrators, Ohio Association of School Business Officials, Ohio Association of Secondary School Administrators, Ohio Federation of Teachers, and Ohio Education Association.

Timothy Young, Ohio Public Defender, and Nikki Trautman Baszynski, Assistant Public Defender, urging affirmance for amicus curiae Ohio Public Defender.

Marsha L. Levick, urging affirmance for amici curiae Juvenile Law Center, Center of Juvenile Law and Policy, Center for Wrongful Convictions of Youth, Children's Law Center, Inc., Rutgers School of Law Children's Justice Clinic, Rutgers Criminal and Youth Justice Clinic, Education Law Center-PA, Professor Barry C. Feld, Juvenile Defenders Association of Pennsylvania, Juvenile Justice Initiative, National Center for Youth Law, National Juvenile Justice Network, Northeast Juvenile Defender Center, Roderick and Solange MacArthur Justice Center, and Youth Law Center.

Law Office of Matthew C. Bangerter and Matthew C. Bangerter; and Russell S. Bensing, urging affirmance for amicus curiae Ohio Association of Criminal Defense Lawyers.

Kimberly Payne Jordan, urging affirmance for amicus curiae Justice for Children Project, Moritz College of Law Clinical Programs, Ohio State University.

_____