[Cite as *State v. Kimes*, 2021-Ohio-650.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| DAVID KIMES II, | : | Case No. 20 CAA 03 0015 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Delaware County
Court of Common Pleas, Case No.
19 CRI 060103

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        March 5, 2021

APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

HAWKEN FLANAGAN        APRIL CAMPBELL
Assistant Prosecuting Attorney        Campbell Law, LLC
Delaware County        545 Metro Place South, Suite 100
145 N. Union Street, 3rd Floor        Dublin, Ohio 43017
Delaware, Ohio 43015

*Baldwin, J.*

{¶1}   Appellant, David Kimes II, appeals the decision of the Delaware County Court of Common Pleas denying his motion to suppress evidence that was discovered on his cell phone. He also appeals the verdict of the jury finding him guilty of five counts of Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(1) and the indefinite prison term of eight to twelve years imposed by the court.  The appellee is the State of Ohio.

## STATEMENT OF FACTS AND THE CASE

{¶2}   Officer Chris Bates of the Delaware City Police Department was on duty and in his patrol car when he received notice that a warrant had been issued for a person driving a Honda Odyssey in the streets of Delaware.  The dispatcher provided a description of the individual and the vehicle and Bates soon noticed the vehicle leaving a gas station and driving in the opposite direction. He saw a person in the passenger seat matching the description of the wanted person described by the dispatcher, but he did not see the driver.  Bates had to turn his vehicle around and lost visual contact with the vehicle.

{¶3}   Bates turned into a side street and located the van parked along the road. He switched on his overhead lights and approached the driver side vehicle, but discovered that the Odyssey was empty.  While at the van he discovered a cell phone on the ground, just outside the driver's door.  The cellphone was attached to a charging cord that led back into the Odyssey through the closed driver side door.  Bates returned to his cruiser to wait for the occupants of the van to return.

**{¶4}** After several minutes, and after no one returned to the van, Bates retrieved the cell phone and pressed the "home" button on the phone to determine the owner. Once he pressed the button, several thumbnail images appeared on the screen that appeared to be pornographic images of children. Bates turned off the phone and contacted Sergeant Bolen of the Delaware Police Department for further instructions. The cell phone was secured by the police department while a warrant was sought to inspect the contents of the phone.

**{¶5}** Detective Daniel Madden of the Delaware Police Department took possession of the cellphone and, pursuant to a warrant, conducted a forensic analysis and produced a detailed report regarding the content and the use of the cellphone. The report was interpreted by Madden as establishing that the cellphone belonged to Kimes, that he was in possession when the images were downloaded and that they were knowingly downloaded.

**{¶6}** Madden's forensic report included a list of contact names on the phone. The contact identified as "Dad" was confirmed to be David Kimes' father. The contact identified as "Baby Mama" was confirmed to be Renee Light, who is the mother of David Kimes' child. The contact identified as "Matt" was confirmed to be David Kimes' brother, Matt Kimes. User accounts identified in the forensic report included a Facebook account belonging to David Kimes, a Facebook Messenger account belonging to David Kimes, and a Gmail account belonging to David Kimes. Images in the forensic report included 'selfie-style' images of David Kimes, as well as images of David Kimes' family members.

**{¶7}** Five separate images in the forensic report depicted scenes of child pornography. Utilizing the data associated with each of the five images, Detective

Strasser and Detective Madden were able to confirm the images were downloaded to the LG cellphone at separate times between 8:29 a.m. and 10:02 a.m. on May 23, 2019. Detective Strasser was then able to confirm that David Kimes was using the LG cell phone during the time period when each of the five images of child pornography were downloaded. The timeline section of the forensic report demonstrated that David Kimes was conducting a back-and-forth text message conversation with Renee Light ("Baby Mama") from 7:02 a.m. to 11:40 a.m. on May 23, 2019, and that he was also engaged in a back-and-forth text message conversation with his brother ("Matt") from 7:03 a.m. to 11:42 a.m. on May 23, 2019.

{¶8}    After confirming the LG cell phone belonged to David Kimes and confirming the phone was in his possession when the images of child pornography were downloaded, Detective Strasser and Detective Madden identified information in the forensic report demonstrating the images were knowingly downloaded. Detective Strasser discovered that the Searched Items portion of the forensic report included a search for "what does a toddler's vagina look like." This search was conducted at 8:16 a.m. on May 23, 2019, approximately 13 minutes before the first image of child pornography was downloaded. Detective Madden then confirmed each of the images of child pornography were "downloaded" onto the phone and he explained the significance of that information. Madden explained that these images were on the phone only because the person using the device made a conscious decision to load the image on the phone and, that by downloading the image a new and separate image was created.

{¶9}    Kimes was indicted on five counts of Pandering Sexually Oriented Matter Involving a Minor and one count of Illegal Use of a Minor in Nudity Oriented Material.  The

count of Illegal Use of a Minor in Nudity Oriented Material was dismissed.  Kimes moved to suppress the images extracted from the phone, claiming that his Fourth Amendment Rights were violated.  The motion was heard by the court and denied.  The matter was presented to a jury and Kimes was found guilty on all counts and sentenced to an indefinite prison term of eight to twelve years.

**{¶10}** Kimes filed a timely appeal and submitted four assignments of error:

**{¶11}** "I. KIMES MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED BECAUSE KIMES DID NOT 'ABANDON' HIS PHONE WITHIN THE MEANING OF THE FOURTH AMENDMENT."

**{¶12}** "II. THE STATE'S EVIDENCE THAT KIMES PANDERED SEXUALLY ORIENTATED(SIC) MATTER INVOLVING A MINOR WAS LEGALLY INSUFFICIENT AS A MATTER OF LAW."

**{¶13}** "III. KIMES'S CONVICTIONS FOR PANDERING SHOULD BE REVERSED, BECAUSE THE EVIDENCE WEIGHED MANIFESTLY AGAINST CONVICTING HIM OF EACH COUNT."

**{¶14}** "IV. KIMES'S SENTENCE UNDER THE REAGAN TOKES ACT IS UNCONSTITUTIONAL. THUS, HIS SENTENCES ARE CONTRARY TO LAW AND SHOULD BE REVERSED."

**ANALYSIS**

**I.**

**{¶15}** In his first assignment of error, Kimes argues that his Fourth Amendment right to be free from unreasonable searches was violated when the officer activated his cellphone and observed the thumbnail images.  He contends he had not abandoned the

cellphone and that, therefor, he retained an expectation of privacy regarding the contents of the phone. He contends that the trial court erred by denying the motion to suppress considering those facts.

{¶16} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside*, *supra*; *Dunlap*, *supra*; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See Burnside, *supra*, quoting *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas*, *supra*. *State v. Johns*, 5th Dist. No. 19-CA-5, 2019-Ohio-4269, 146 N.E.3d 1286, ¶ 11.

{¶17} Kimes does not contradict the facts as presented by appellee at the hearing. The officer pursued the van based upon a description of the van and the passenger. He came upon the van after the passenger and the driver had parked and left the van. The

officer approached the van and noticed a cellphone on the ground, outside the driver's door, still attached to a charging cable that led back into the van. He waited for someone to return to the van and, when no one returned, he picked up the phone and activated it with the goal of discovering the owner. He immediately noticed the thumbnail images of child pornography, turned off the phone and contacted his supervisor.

**{¶18}** Kimes first assignment of error is based upon the characterization of the cellphone as abandoned property. The "[q]uestion of whether property has been abandoned along with any constitutional interest in the right to privacy or security of a property interest is a factual one; trial court must weigh the facts and circumstances to determine if in fact the property and constitutional interest therein has been, in fact, abandoned." *State v. Harkins*, 5th Dist. Licking No. 02-CA-00019, 2002-Ohio-3940, ¶¶ 22-24 quoting *State v. Brown* (1975), 45 Ohio App.2d 76, 78, 341 N.E.2d 325.

Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. *United States v. Cowan,* 2d Cir. 1968, 396 F.2d 83, 87. All relevant circumstances existing at the time of the alleged abandonment should be considered. *United States v. Manning,* 5th Cir. 1971, 440 F.2d 1105, 1111. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. See *Abel v. United States, supra*; *United States v. Edwards*, 5th Cir. 1971, 441 F.2d 749; *Lurie v. Oberhauser*, 9th Cir. 1970, 431 F.2d 330. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property

in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *United States v. Edwards, supra*, 441 F.2d at 753; cf. *Katz v. United States*, 1967, 389 U.S. 347 (83 S.Ct. 507, 19 L.Ed.2d 576) * * *."

*State v. Freeman*, 64 Ohio St.2d 291, 297, 414 N.E.2d 1044, 1048 (1980).

**{¶19}** In the case before us the facts leading to the discovery of the phone are limited. The officer was pursuing the van, but the record does not show that the occupants of the van were aware of the pursuit. The van was legally parked on a side street and the officer came upon the van after the occupants had left the van. The phone was on the ground, still attached to the charging cable. The officer suggested that the driver exited the vehicle while the phone was on his lap or in a position such that the driver was unaware of the fact that the phone dropped to the ground. Further, the record does not allow us to identify the driver of the van with any confidence.

**{¶20}** Considering all the circumstances, we cannot agree that the phone was abandoned in the sense that the owner "voluntarily discarded, left behind, or otherwise relinquished his interest in the [cellphone] so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *Id.* The cellphone found by the officer was not abandoned, but merely unattended by the owner. "The definition of "unattended" is similar to the definition of "lost," which is defined as "gone out of one's possession or control; mislaid." Webster's Third New International Dictionary at 1338. Therefore, we also look to case law addressing lost property to assist our analysis." *State v. Polk*, 150 Ohio St.3d 29, 2017-Ohio-2735, 78 N.E.3d 834, ¶ 30.

**{¶21}** "Property is lost through inadvertence, not intent." *State v. Ching*, 67 Haw. 107, 110, 678 P.2d 1088 (1984). Consequently, a person retains a reasonable expectation of privacy in a lost item, "diminished to the extent that the finder may examine the contents of that item as necessary to determine the rightful owner." (Citations omitted.) *Polk, supra* at ¶ 30.

**{¶22}** We find that the cellphone was mislaid or unattended. The officer waited for the occupants of the van to return and, when they did not, he picked up the phone and pressed the home button to determine the rightful owner. The phone was activated and the officer noted evidence of child pornography and he immediately turned off the phone. Kimes did retain an expectation of privacy in the phone, but that right was diminished to the extent that the officer could examine the content of the phone to determine the owner. The officer's activation of the home button with the intent to discover the rightful owner of the phone was not unreasonable under the circumstances, did not violate Kimes' expectation of privacy and was therefore not a violation of Kimes' Fourth Amendment rights.

**{¶23}** Kimes' First Assignment of Error is denied.

## II.

**{¶24}** In his second assignment of error, Kimes contends that the evidence that he pandered sexually oriented matter involving a minor was legally insufficient as a matter of law as there was no evidence that the phone was Kimes or, assuming it was his, that he downloaded or accessed the images.

**{¶25}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, (1991), paragraph two of the syllabus.

**{¶26}** The appellee presented no direct evidence that Kimes was the owner of the phone or that he downloaded the subject images.  Instead, appellee relied on circumstantial evidence to prove its case.

'Circumstantial evidence and direct evidence inherently possess the same probative value.' " *Id*., quoting *Jenks* at paragraph one of the syllabus. "Furthermore, '[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the [fact finder's] fact-finding function is concerned, all that is required of the [fact finder] is that [it] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.' " *Id*., quoting *Jenks* at 272.

*State v. Fielding,* 10th Dist. No. 13AP-654, 2014-Ohio-3105, 15 N.E.3d 912, ¶ 52.

**{¶27}** Kimes was charged with a violation of R.C. 2907.322(A)(1), pandering sexually oriented matter involving a minor or impaired person which states that "[n]o person, with knowledge of the character of the material or performance involved, shall * * *[c]reate, record, photograph, film, develop, reproduce, or publish any material that shows a minor or impaired person participating or engaging in sexual activity, masturbation, or bestiality."  Appellant contends there is insufficient evidence in the record to prove he had "knowledge of the character of the material or performance involved" in the images or that he had acted to "[c]reate, record, photograph, film, develop, reproduce, or publish" the images and that the charges should have been dismissed.

**{¶28}** Kimes does not contend that the images did not reflect a minor participating or engaging in sexual activity, so the appellee focused upon evidence to establish Kimes' ownership of the phone, his reproduction of the images and his knowledge of the character of the images. After reviewing the record, we find sufficient evidence to support all of the elements of the charge.

**{¶29}** The appellee addressed ownership of the phone by presenting evidence developed from a forensic examination of the phone. An officer trained in the use of software designed to extract data from cellphones described the process of acquiring and interpreting the data that was within the phone's memory. His examination revealed that the phone had only one user. He found an index of contact names within the phone that included Kimes' brother, identified as Matt, as well as Kimes' father. One contact was not described with a name, but with the moniker "Baby Mama" and that person was identified later as the mother of Kimes' child.

**{¶30}** The forensic examination revealed additional ties to Kimes. Social media accounts, e.g. Facebook and Facebook Messenger, as well as email accounts were registered on the phone, all of which were Kimes' accounts. Kimes appeared in several "selfie" style photographs that were saved on the phone, suggesting that the phone was used by Kimes to take photos of himself and family members.

**{¶31}** This circumstantial evidence was not refuted by evidence produced by Kimes and was sufficient to establish the phone was owned and used by Kimes.

**{¶32}** Appellee offered additional evidence from the forensic examination to establish Kimes' use of the phone to acquire the images and his knowledge of the content and character of the images.

**{¶33}** The officer that extracted the data found that the date and time that the images in question were downloaded to the phone coincided with the date and time the phone was used to exchange text messages with the mother of Kimes' child to discuss the details of an event where the child attended school. That officer also discovered an exchange of texts with Kimes' brother, Matt, regarding work. Within the same approximate time frame, the user of the phone performed a search using the phrase "what does a toddler's vagina look like?" Considering this evidence in a light most favorable to the appellee, we find that a rational trier of fact could conclude that the phone was owned and used by Kimes and that he not only had knowledge of the character of the images he downloaded, but had intentionally sought those images.

**{¶34}** The officer also explained that the photos were "downloaded" to the phone meaning that Kimes took active steps to select the image and recreate them within his phone. As part of the downloading process, the software within the phone creates a copy of the image, completely independent of the image on the website. At the completion of the downloading process, two separate copies of the image existed—one on the website and one on Kimes' phone.

**{¶35}** The appellee presented unrefuted circumstantial evidence that Kimes owned and used this phone, and that he downloaded the photos to the phone knowing that they contained images that violated R.C. 2907.322(A)(1). After viewing the evidence in a light most favorable to the prosecution, we hold that any rational trier of fact could have found the essential elements of pandering sexually oriented matter involving a minor proven beyond a reasonable doubt.

**{¶36}** Kimes second assignment of error is overruled.

### III.

{¶37} In his third assignment of error, Kimes contends that his conviction was against the manifest weight of the evidence, repeating his argument from his second assignment of error and contending that the phone may have been accessed by a third, unidentified party who added the subject images.

{¶38} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶39} In our review of the second assignment of error we held that the appellee presented unrefuted circumstantial evidence from which a rational trial of fact could find that the elements of the charge were proven beyond a reasonable doubt. Kimes' contention that the phone was not password protected and was accessible to anyone to download illegal images does not outweigh the detailed forensic analysis presented by appellee describing the date and time of the addition on the images to the phone which coincided with use of the phone that can be associated with Kimes and his family. "Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the 'exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Schoeneman*, 5th Dist. Stark No. 2017CA00049,

2017-Ohio-7472, ¶ 22. Kimes argument falls short of establishing that this is the "exceptional case in which the evidence weighs heavily against the conviction."

**{¶40}** Kimes third assignment of error is denied.

### IV.

**{¶41}** In his fourth assignment of error, Kimes argues his sentence should be vacated as it was imposed by the Reagan-Tokes Act, which he argues is unconstitutional.

**{¶42}** This Court has analyzed appeals of sentences imposed pursuant to the Reagan-Tokes Act. See *State v. Downard*, 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227, *State v. Kibler,* 5th Dist. Muskingum No. CT2020-0026, 2020-Ohio-4631 and *State v. Cochran*, 5th Dist. Licking No. 2019 CA 00122, 2020-Ohio-5329.

**{¶43}** In these cases we considered the legal concept of "ripeness for review." The Ohio Supreme Court discussed the concept of ripeness for review in *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 1998-Ohio-366, 694 N.E.2d 459:

Ripeness "is peculiarly a question of timing." *Regional Rail Reorganization Act Cases* (1974), 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320, 351. The ripeness doctrine is motivated in part by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies * * *." *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691. As one writer has observed:

The basic principle of ripeness may be derived from the conclusion that 'judicial machinery should be conserved for problems which are real or

present and imminent, not squandered on problems which are abstract or hypothetical or remote.' * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards the prospects of a day in court: the time for judicial relief is simply not yet arrived, even though the alleged action of the defendant foretells legal injury to the plaintiff. Comment, Mootness and Ripeness: The Postman Always Rings Twice (1965), 65 Colum. L.Rev. 867, 876. *4 Id. at 89, 694 N.E.2d at 460.

*Downard,* at ¶¶ 8-9.

**{¶44}** We found those appellants' appeals of the constitutionality of the Reagan-Tokes Act were not ripe for review. "* * * [W]hile R.C. 2967.271 allows the DRC to rebut the presumption Appellant will be released after serving his **** minimum sentence and potentially continue his incarceration to a term not [exceeding the maximum time], Appellant has not yet been subject to such action by the DRC, and thus the constitutional issue is not yet ripe for our review." *Downard,* at ¶ 11. We determined the appropriate action for the appellant was "to challenge the constitutionality of the presumptive release portions of R.C. 2967.271 is by filing a writ of habeas corpus if he is not released at the conclusion of his eight year minimum term of incarceration." *Downard*, at ¶ 12.

**{¶45}** We find that the issues presented in the current case are identical to those in *Downard, Kibler* and *Cochran*. Kimes was sentenced to a minimum prison term of eight years and an indefinite prison term of twelve years. There is no dispute that Kimes has not yet been subject to R.C. 2967.271, which allows the DRC to rebut the presumption that he will be released after serving his eight year minimum sentence and potentially continuing his incarceration to a term not exceeding twelve years. The constitutional

issues argued by Kimes are not yet ripe for review. (*See also State v. Maddox,* 6th Dist. Lucas No. CL-19-1253, 2020-Ohio-4702 and *State v. Halfhill,* 4th Dist. Meigs No. 20CA7, 2021-Ohio-177, ¶ 20).

**{¶46}** Kimes' fourth assignment of error is overruled and the decision of the Delaware County Court of Common Pleas is affirmed.

By: Baldwin, P.J.

Wise, John, J. and

Wise, Earle, J. concur.