[Cite as *State v. Howard*, 2013-Ohio-2123.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                    :

                                 :          Appellate Case No. 25276

    Plaintiff-Appellee           :

                                 :          Trial Court Case No. 2011-CR-3318

v.                               :

                                 :

JOSEPH C. HOWARD                 :          (Criminal Appeal from

                                 :           Common Pleas Court)

    Defendant-Appellant          :

                                 :

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of May, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

ADELINA E. HAMILTON, Atty. Reg. #0078595, Law Office of the Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Joseph C. Howard appeals from his conviction and sentence following a

no-contest plea to one count of cocaine possession.

{¶ 2}    In his sole assignment of error, Howard contends the trial court erred in overruling his motion to suppress the cocaine.

{¶ 3}    The facts underlying the present appeal are based on evidentiary-hearing testimony and are set forth in the trial court's suppression ruling as follows:

> * * * Detective Chad Knight ("Detective Knight") has been in law enforcement for 18 years and has been employed by the Dayton Police Department for 15 years. Detective Knight has been working in Special Investigations, VICE, and with gangs for about 12 years. On September 24, 2011, Detective Knight was informed by street crews that the Renegades were having a party at the Renegades Clubhouse ("The Clubhouse"), located at 135 Drummer Avenue. The Renegades is a multi-state motorcycle "biker" gang founded in Dayton. The street crews had received nuisance calls regarding shots fired and a loud party at the Clubhouse. Detective Knight testified that the Renegades have a violent past and are considered by both the police and the FBI as an "outlaw motorcycle club." Detective Knight has dealt with bikers for the past 12 years and has trained with gang units in Columbus, San Diego, and the FBI Academy in Virginia. In his experience, Detective Knight testified that "bikers, guns, and knives go hand in hand."
>
> Detective Knight is familiar with the Renegades and has interacted with several of its members and leaders on previous occasions. In addressing the nuisance calls, Detective Knight met with his supervisor and about fifteen street officers and unmarked units outside of the Clubhouse. It appeared that the officers

were outnumbered by the Renegades 3 to 1; therefore, the officers developed a plan of approach before entering the Clubhouse. The plan of approach was designed to maximize officer safety because Renegade members have a reputation for sometimes being hostile towards law enforcement and it appeared that some members had been drinking heavily that evening. The plan of approach required officers to pat down Renegade members in the gated portion of the Clubhouse's front yard and then direct members one at a time to the backyard to speak with Detective Knight and his supervisor. Once the plan was decided, Detective Knight approached the clubhouse to inform the club's leaders of the nuisance calls and the need to speak with Renegade members. All Renegade leaders were fully cooperative. Further, while executing the plan of approach and pat downs, Renegade members were free to leave at any point and were not required to stay on the premises.

Pat downs were conducted by Officer Joseph Setty ("Officer Setty"). Officer Setty has been with the City of Dayton Police Department for five years and law enforcement for nine years. Prior to working for the City of Dayton, Officer Setty worked with [the] Germantown Police Department. Officer Setty's current duties include road patrol, traffic enforcement, and taking calls of service.

During the pat downs, Officer Setty and other officers recovered knives and guns from Renegade members. At no point during the pat downs did any Renegade resist and ultimately the officers made between two and three arrests. During the pat downs, Officer Setty came into contact with Joseph Howard

("Defendant"). The Defendant is a member of the Renegades and was in attendance at the Clubhouse party that evening.

Officer Setty conducted pat downs of about 15-20 Renegade members before the Defendant walked towards Officer Setty. Officer Setty began the pat down without asking for permission or acquiring any verbal consent from the Defendant because the Defendant was acting in a manner consistent with the other Renegades who consented to the pat downs. Officer Setty described the Defendant as being very cooperative and friendly during the pat down.

During the pat down, Officer Setty used a closed fist to pat down the outside of the Defendant's clothing. Officer Setty found a handgun in the Defendant's left rear pocket and three knives on the Defendant's person. Officer Setty felt a bulge when he patted down the Defendant's right front pants pocket. Officer Setty removed the container from the Defendant's pocket. The container was white, nontransparent, approximately two inches by two inches in size and had a screwed lid.

Based on his experience in law enforcement, Officer Setty was concerned that the container might be hiding a razor-blade. Officer Setty testified that he is familiar with razor blades being concealed in similar types of containers and to maintain officer safety he decided to open the container. Officer Setty unscrewed the container and observed a white, powdery, substance spill onto the ground. Officer Setty collected as much of the powder as he could off the ground and placed it into the container. Officer Setty handed the container filled with the

remains of the substance to another officer to test it. The substance tested positive for cocaine. At no point during the investigation of the substance did Officer Setty interview the Defendant, obtain a warrant, or recite the Defendant his *Miranda* rights. The defendant was placed under arrest following the pat down.

(Doc. #16 at 1-3).

{¶ 4} Based on the foregoing facts, the trial court held (1) that the interaction between Setty and Howard, including the pat down, was a "consensual encounter," (2) that Setty also had reasonable, articulable suspicion justifying a weapons pat down, (3) that Setty was permitted to remove the container from Howard's pants pocket because he reasonably believed it "could be a weapon," (4) that Setty was permitted to open the container "based on his suspicion that it might be housing a razor blade," (5) that Setty had probable cause to arrest Howard after finding cocaine in the container, and (6) that no potential *Miranda* issue existed because Setty did not engage in any custodial interrogation. As a result of these findings, the trial court overruled Howard's motion to suppress the cocaine. (*Id*. at 3-7). Howard subsequently pled no contest to one count of cocaine possession, a fifth-degree felony. (Doc. #17). The trial court found him guilty and imposed five years of community control. (Doc. #18).

{¶ 5} On appeal, Howard argues that his encounter with Setty was not consensual and that police lacked authority to subject him to a pat down. He maintains that the incident was an investigatory detention and weapons frisk under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), without the requisite individualized suspicion that he had done anything wrong or that he was armed and dangerous. Howard further argues that Setty lacked authority to open the small container discovered in his pants pocket. He asserts that he did not consent to

Setty opening the container, that there was nothing incriminating or threatening about the container, and that the mere possibility it could contain razor blades did not justify opening it.

{¶ 6}    In response, the State argues that the encounter between Setty and Howard was consensual and that Howard consented to the pat down. In any event, the State claims police had reasonable, articulable suspicion to believe Howard was armed and dangerous, entitling Setty to pat him down. Finally, the State asserts that Setty was entitled to open the container found in Howard's pocket because he reasonably believed it could contain a weapon.

{¶ 7}    "In reviewing a decision of a trial court on a motion to suppress, an appellate court gives broad deference to a trial court's findings of fact. * * * But whether the facts found by the trial court justify suppression of the evidence is a question of law subject to de novo review." *State v. Anderson*, 2d Dist. Montgomery No. 24678, 2012-Ohio-441, ¶ 10. Having reviewed the record, we conclude that the trial court's factual findings are supported by the suppression-hearing testimony. Applying those facts to the legal issues before us, we find that officer Setty had no legal authority to open the small container found in Howard's pants pocket.

{¶ 8}    For present purposes, we will assume, arguendo, that the encounter between Setty and Howard was consensual and that Howard consented to a pat down for officer safety. At the outset of the pat down, Howard advised Setty that he was carrying a handgun (for which Howard possessed a concealed-carry permit). (Tr. at 38, 47-48). Setty felt the small handgun in Howard's left rear pocket and removed it. (*Id.*). Setty also found three legal pocket knives in Howard's possession along with the closed container at issue. (*Id.* at 39). Setty described the container as being white, opaque, and unmarked. (*Id.* at 52). He estimated that it measured two inches by two inches. (*Id.* at 54). Setty testified that he was concerned for "officer safety" when he felt it. (*Id.* at

40). He explained that the container could have contained razor blades. (*Id*. at 40). Setty then was asked about his prior experience finding razor blades. The following exchange occurred between the prosecutor and Setty:

> Q. You indicated you did have previous experience with items such as razor blades being concealed in small containers?
>
> A. Yes.
>
> Q. How recently or how many time would you say you've come across something like that?
>
> A. It just depends. Homeless people have a lot of razor blades, stuff like that. My—I've had gang training. I worked with [a] gang task force as well in the past. And they hide razor blades in their shoe. They hide razor blades—any small, little areas where they can hide stuff like that.

(Tr. at 42).

{¶ 9} Even if Setty's pat down was lawful, we find that his act of opening the container and examining its contents violated the Fourth Amendment. Setty did not seek Howard's permission to open the container, and he lacked a warrant to open it. (*Id*. at 53). Nor did Howard explicitly or implicitly give Setty consent to search the container. Upon discovering it, Setty simply removed the lid and tipped the container to see what was inside. (*Id*. at 52). The only articulated justification for this act was Setty's concern that the container might contain razor blades.

{¶ 10} It is well settled that a lawful pat down for officer safety must be limited to a search for weapons that may harm the officer. *State v. Evans*, 67 Ohio St.3d 405, 414, 618

N.E.2d 162 (1993). An officer may remove an object felt during a pat down if he recognizes it as a weapon. *Id.* Conversely, an officer may not remove an object if he determines from his sense of touch that it is not a weapon. *Id.* If an officer is unable to determine whether an object is a weapon, he may remove it if he reasonably believes, based on its size and density, that it could be a weapon. *Id.* at 414-415.

{¶ 11}   In the present case, Setty testified that it was immediately apparent to him the object in Howard's pocket was a container. (Tr. at 54). Although a container is not a weapon, Setty feared it might contain a weapon such as a razor blade. (*Id*. at 40, 54). In *Evans*, the Ohio Supreme Court concluded that an officer performing a lawful pat down cannot remove "a soft object that the officer knows or reasonably should know is not itself a weapon on the grounds that it may contain a small weapon such as a razor blade." *Evans* at 416. This is so because a razor blade can be concealed almost anywhere and provide a pretext for any search. *Id.*

{¶ 12}   This court reached the same conclusion in *State v. Holley*, 2d Dist. Montgomery No. 20371, 2004-Ohio-4264.   There an officer discovered crack cocaine in a cigarette pack removed during a lawful pat down. Applying *Evans*, this court reasoned:

> In the present case, Holley pulled a hard-top cigarette pack from his shorts pocket. When [Officer] Laravie saw the cigarette pack, he could only act within the boundaries established for a pat-down under *Terry*. Laravie testified that he thought the pack might contain a small weapon and opened it to eliminate the possibility. However, Laravie could have felt the pack to determine if a small gun was inside. Laravie also could have determined the likelihood of a concealed gun by simply feeling the weight of the pack in his hand. However, Laravie was not

justified in opening the pack on the basis that it could contain a razor. As the *Evans* court held, a razor blade, being extremely small and flexible, could be concealed anywhere. As the court noted, "something of the size and flexibility of a razor blade could be concealed virtually anywhere, and accordingly provide the pretext for any search however thorough. Such a police procedure would, therefore, be impermissible under *Terry* * * *." *Id.* Laravie could have determined whether the pack contained weapons by feeling it because of its small size and density, and was not justified in opening it. Because Laravie violated the standards established for a pat-down in *Terry*, the evidence collected as a result was properly suppressed.

*Id.* at ¶11.

{¶ 13} Similarly, in *State v. Jones*, 4th Dist. Washington No. 03CA61, 2004-Ohio-7280, the Fourth District held that an officer performing a lawful pat down could not open two small containers for officer safety. The *Jones* court reasoned:

[Officer] Smeeks testified that the Blistex and Tylenol containers felt like weapons because they were hard. He stated that he believed the containers could have held weapons because "anything can be a weapon" and the Blistex container could have contained gun powder with a fuse or a knife. The mere possibility that a razor blade or other small weapon could have been in the containers is an insufficient basis to search. *See Evans*, *supra*. Although the removal of the objects from Jones' pants may have been justified, given their small size it is unreasonable that a weapon could have been housed in either container. Moreover,

since the containers were not obviously contraband, they could not be opened under the plain view doctrine.

*Id.* at ¶36.

{¶ 14} The State argues that *Evans* and *Holley* are distinguishable from the present case on two grounds. First, Setty was not acting based on a general suspicion that razor blades might be concealed in small containers. He knew from experience that gang members conceal razor blades in small areas. Second, the container Setty felt in Howard's pocket was "hard," unlike the "soft" objects discussed in *Evans* and *Holley*.

{¶ 15} We are unpersuaded by the foregoing distinctions. Setty did profess to know that gang members sometimes hide razor blades in "any small, little areas[.]" (Tr. at 42). But if this general knowledge were enough to justify a search, it reasonably could justify almost any search. Indeed, the "small, little areas" from which a gang member might access a razor blade are limitless. Wallets, shoes, handkerchiefs, clothing seams, and more intimate areas would be open to observation in the name of officer safety. "To allow a search for anything which could under some circumstances be employed as a weapon would be to permit a search just as intrusive as that which can be made incident to custodial arrest, except in the rare case where the suspect's pockets are entirely empty." 4 LaFave, Search and Seizure, §9.6(c), at 909 (5th Ed.2012).

{¶ 16} This is precisely the problem the Ohio Supreme Court recognized when it concluded that an officer cannot remove an object he "knows or reasonably should know is not itself a weapon on the grounds that it may contain a small weapon such as a razor blade." *Evans* at 416; see also *U. S. v. Del Toro*, 464 F.2d 520, 522 (2d Cir.1972) ("[S]omething of the size and

flexibility of a razor blade could be concealed virtually anywhere, and accordingly provide the pretext for any search, however thorough. It is significant that here, for example, Officer LaBriola's pat-down revealed an object which he supposed to be appellee's wallet. It could easily have contained a razor blade; yet it was not seized.").[1]

{¶ 17} Although the discussion in *Evans* and *Holley* involved relatively "soft" objects, that fact does not meaningfully distinguish those cases, at least insofar as razor blades are concerned. In *Evans*, the Ohio Supreme Court disapproved of police removing a "soft" object during a pat down on the basis that it might contain a razor blade. The rationale for the *Evans* court's disapproval applies with equal force, however, to "hard" objects feared to contain a razor blade. As the *Evans* court explained, "'a razor blade could be concealed virtually anywhere, and accordingly provide the pretext for any search, however thorough.'" (Citation omitted.) *Evans* at 416. This court relied on the same rationale in *Holley* to find that police could not search a cigarette pack during a lawful pat down on the basis that it might contain a razor. We find the same rationale—that a razor blade could be concealed virtually anywhere and therefore justify any search—equally applicable to the small, hard container found in Howard's pocket.[2]

---

[1] Here Setty mentioned knowing that gang members hide razor blades in their shoes. (Tr. at 42). Yet the record contains no evidence that he searched Howard's shoes during the pat down.

[2] We note that the trial court cited the plain-feel doctrine to support its decision below. (Doc. #16 at 5) (finding that "Removal of the Contraband was Lawful Under the Plain Feel Doctrine"). We do not believe the plain-feel doctrine has applicability here. The doctrine allows police performing a lawful weapons pat down to remove non-weapon contraband from a suspect when the contraband's incriminating nature is immediately apparent. *Evans* at fn. 5. The plain-feel doctrine "has no relevance * * * where personal safety is the reason behind the officer's entering the suspect's pocket." *Id.* The trial court also cited *State v. Parks*, 2d Dist. Montgomery No. 14794, 1995 WL 418758 (July 14, 1995). In *Parks*, this court held that an officer lawfully removed a hard object from the appellant's coat pocket during a frisk. Notably, the officer believed the object itself was a weapon, and this court stressed that it reasonably could have been a gun barrel. *Id.* at *6. This court observed too that the officer's suspicions were "reasonably aroused" when the appellant refused to respond when asked about the object. *Id.*

{¶ 18} Finally, we note that "[i]n determining what objects might be a weapon, consideration must be given to what types of objects could be so employed in the setting of the particular case." 4 LaFave, Search and Seizure, §9.6(c), at 909 (5th Ed.2012). "Generally speaking, it may be said that certain items which might be employed as weapons in a surprise attack from the rear would not be effective during the face-to-face encounter of a field interrogation. And in a particular situation, it may be apparent that a particular type of weapon would be of no use because of the superior police presence." *Id.* These case-specific considerations militate against a finding that the container in Howard's pocket even posed a realistic threat to officer safety on the basis that it could hold razor blades.

{¶ 19} The suppression-hearing transcript reveals that Howard is an "older gentleman" who "walks with a cane." (Tr. at 46). When Howard approached Setty for the pat down, "he came in real slowly[.]" (*Id.* at 38). The pat down occurred at the entrance to a fenced area where Howard was going, allegedly voluntarily, to be field interviewed by waiting detectives. (*Id.* at 48). Under these circumstances, we are unconvinced that there was a reasonable and articulable suspicion that Howard posed a sufficient danger to the waiting detectives or other officers, who undoubtedly were armed themselves, from a generalized possibility that he could have concealed razor blades in a closed container in his pants pocket. Therefore, Setty's act of opening the container in the name of officer safety was unjustified for this additional reason as well.

{¶ 20} Based on the foregoing analysis, we hold that Setty was not justified in opening

---

We find *Parks* distinguishable. Setty did not believe the object in Howard's pocket was a weapon. Nor could it have been a gun barrel. Rather, Setty believed the object in Howard's pocket may have contained a weapon, namely razor blades. In our view, the present case is more appropriately governed by the rationale of *Evans* and *Holley* upon which we have relied above.

the container he found in Howard's pocket and that the trial court erred in failing to suppress the cocaine found in the container. Howard's sole assignment of error is sustained. The judgment of the Montgomery County Common Pleas Court is reversed, and the cause is remanded for further proceedings.

. . . . . . . . . . . . .

FAIN, P.J. and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
Adelina E. Hamilton
Hon. Dennis J. Adkins