[Cite as *State v. Shoenberger*, 2022-Ohio-253.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

      Plaintiff-Appellee,

- v -

SHAWN E. SHOENBERGER,

      Defendant-Appellant.

CASE NO. 2021-A-0011

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2019 CR 00505

**O P I N I O N**

Decided: January 31, 2022
Judgment: Reversed; remanded

*Colleen M. O'Toole*, Ashtabula County Prosecutor, *Shelley M. Pratt*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (for Plaintiff-Appellee).

*Aaron A. Schwartz* and *Megan M. Patituce*, Patituce & Associates, LLC, 16855 Foltz Industrial Parkway, Strongsville, OH 44149 (for Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Shawn Shoenberger, appeals the January 30, 2020, judgment of the Ashtabula County Court of Common Pleas denying his motion to suppress. Appellant asserts three assignments of error alleging that law enforcement illegally initiated contact with Shoenberger, illegally detained him, and illegally searched and seized evidence from his person. For the following reasons, we find that the lower court erred by denying appellant's motion to suppress. Therefore, we vacate the judgment of conviction, reverse the order denying appellant's motion to suppress, and remand for further proceedings.

{¶2} On February 18, 2019, Officer Howell of the Ashtabula Police Department overheard radio traffic calling for the Ashtabula Fire Department to respond to a possible overdose. The report indicated a man, possibly overdosed, was slumped over in a white car in the driveway at 1504 West 9th Street. Howell was in the area and responded. When he arrived, he encountered another man in a vehicle who pointed to a white car in the driveway of 1504 West 9th Street and said "Oh, he must have woken up." The man in the car then drove away and Howell never identified him.

{¶3} Howell then approached the vehicle in the driveway and advised the occupant that he was investigating a possible overdose. The man in the vehicle identified himself as Shoenberger. He denied passing out and said he had dropped his cell phone on the floor of the car and had bent over to pick it up. He further said he was waiting for his girlfriend who lived at the residence.

{¶4} Howell asked Shoenberger to step out of the vehicle to investigate the overdose claim further. He then told Shoenberger that he was going to pat him down and Shoenberger turned around. During the pat down, Howell felt a circular bulge in Shoenberger's front left pocket. Howell asked what the object was and Shoenberger immediately shoved his hand in his pocket. Howell grabbed Shoenberger's wrist to stop him from retrieving the item because he "was afraid he was going to pull a weapon out." Howell again asked what the object was and Shoenberger slowly pulled the object out revealing a circular change container with a zipper around it. Shoenberger also pulled a twenty-dollar bill from his pocket at the same time.

{¶5} When Howell saw that the item was not a weapon, he released Shoenberger's wrist, but noticed that Shoenberger appeared to be shielding the item from

2

view. Howell again asked what the item was and Shoenberger said that he had a twenty-dollar bill. Howell asked about the change container and Shoenberger sighed and said it was "something I shouldn't have."

{¶6} After being called to the scene for a possible overdose and Shoenberger's evasiveness and ultimate admission that the item contained something he should not have, Howell believed the item contained "something illegal." He therefore took the change container, opened it, and found two baggies with two different rock substances inside which appeared to be heroin.

{¶7} Then, the ambulance arrived in response to the possible overdose call. Howell seized the change container and Shoenberger spoke to ambulance personnel who examined and released him. After this, Howell allowed Shoenberger to enter his girlfriend's house rather than placing him in custody.

{¶8} On October 9, 2019, the Ashtabula County Court of Common Pleas indicted Shoenberger for Aggravated Trafficking in Drugs, a felony of the third degree, Aggravated Possession of Drugs, a felony of the third degree, Trafficking in Fentanyl Related Compound, a felony of the fourth degree, Trafficking in Heroin, a felony of the fourth degree, Possession of Fentanyl Related Compound, a felony of the fourth degree, Possession of Heroin, a felony of the fourth degree, and Possessing Criminal Tools, a felony of the fifth degree.

{¶9} Shoenberger sought to suppress the evidence of his arrest on the basis that Howell illegally detained Shoenberger in an investigatory stop without reasonable suspicion, illegally removed him from his vehicle, and illegally searched his person and possessions. The trial court overruled his motion after a hearing. Shoenberger then

3

entered a plea of no contest to all counts and was sentenced to two-years of intensive community control. Shoenberger timely filed this appeal and raises three assignments of error relating to his motion to suppress.

{¶10} "'Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a hearing on a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. *Id.*; *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). A reviewing court must accept the facts determined by the trial court as true and "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside, supra,* citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

{¶11} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." Fourth Amendment, United States Constitution. The Ohio Constitution likewise protects against arbitrary government invasions. *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11, citing *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997). "The touchstone of both is reasonableness." *State v. Brown*, 11th Dist. Lake No. 2020-L-002, 2020-Ohio-5140, ¶ 8, citing *State v. Michael*, 2013-Ohio-3889, 995 N.E.2d 286, ¶ 10 (10th Dist.).

{¶12} "'[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" (Footnote

4

omitted.) *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "When a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement. *Athens v. Wolf*, 38 Ohio St.2d 237, 241, 313 N.E.2d 405 (1974)." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 17-18.

{¶13} "Courts must exclude evidence obtained by searches and seizures that violate the Fourth Amendment." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 181, citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (extending the exclusionary rule to the states). " 'The primary purpose of the exclusionary rule is to remove incentive from the police to violate the Fourth Amendment.' " *State v. Eggleston*, 11th Dist. Trumbull, 2015-Ohio-958, 29 N.E.3d 23, ¶ 17, quoting *State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586, 2014 WL 2733098, ¶ 29.

{¶14} Appellant raises three assignments of error:

{¶15} "[1.] THE TRIAL COURT ERRED IN FINDING THAT OFFICER HOWELL HAD ACTED AS A COMMUNITY-CARETAKER."

{¶16} "[2.] OFFICER HOWELL WAS ENGAGED IN AN INVESTIGATORY STOP WITHOUT REASONABLE SUSPICION AND, AS SUCH, THE TRIAL COURT ERRED IN FINDING THAT THERE HAD BEEN A CONSENSUAL ENCOUNTER."

{¶17} "[3.] OFFICER HOWELL LACKED A CONSTITUTIONAL BASIS TO REMOVE MR. SHOENBERGER FROM THE VEHICLE AND CONDUCT A SEARCH."

5

Case No. 2021-A-0011

{¶18} Shoenberger argues that it was not permissible for Howell to approach Shoenberger in his vehicle and question him under the community-caretaking exception to the Fourth Amendment; that the trial court incorrectly determined that his encounter with Howell was consensual; that Howell improperly removed him from his vehicle; and that Howell improperly subjected him to a *Terry* pat down.

{¶19} We address the *Terry* pat down issue at the outset because it is dispositive of the case.

{¶20} A frisk search for weapons under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), justified "on the basis of reasonable suspicion less than probable cause—must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), quoting *Terry,* at 26.

{¶21} There are three steps to a *Terry* analysis. First, to justify the investigatory stop, the officer must have reasonable suspicion that "criminal activity may be afoot." *Terry, supra*, at 30. Second, if the officer reasonably believes the person "may be armed and presently dangerous," the officer may perform a limited pat down to determine if the person has a gun or other weapon. *Id.*; *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph two of the syllabus (An officer must have "a reasonable suspicion that an individual is armed based on the totality of the circumstances * * *.") Third, the officer may perform a more thorough pat down of the person if the officer has a reasonable belief that an object is a weapon. *Id.* at 21-22.

{¶22} "The frisk, or protective search, approved in *Terry* is limited in scope to a pat-down search for concealed weapons when the officer has a reasonable suspicion that

6

the individual whose behavior he is investigating at close range may be armed and dangerous." *State v. Andrews*, 57 Ohio St.3d 86, 89, 565 N.E.2d 1271 (1991), citing *Terry, supra*, at 27. "While probable cause is not required, the standard to perform a protective search, like the standard for an investigatory stop, is an objective one based on the totality of the circumstances." *Id.* "The rationale behind the protective search is to allow the officer to take reasonable precautions for his own safety in order to pursue his investigation without fear of violence." *Id.*, citing *Terry,* at 24, 30.

{¶23} In *State v. Luther*, 11th Dist. Lake No. 2018-L-039, 2018-Ohio-4568, 123 N.E.3d 296, this court concluded that a pat down search was appropriate where the officers involved "were concerned" the suspect "might try to harm them in order to flee because it appeared appellant had attempted to evade the officers on his bicycle, was sweating profusely, refused to make eye contact, and was looking around as though for an escape route." *Id.* at ¶ 21. Based on the totality of the circumstances in that case, the pat down search to determine if the suspect was armed was not unreasonable.

{¶24} In this case, Howell told Shoenberger to step out of the vehicle and told him that he "was going to pat him down for weapons." To have been permitted to conduct the weapons frisk, Howell must have reasonably believed that Shoenberger was "armed and presently dangerous." *Terry, supra*, at 30. The trial court described the encounter between Shoenberger and Howell by saying "the defendant provided a suspicious answer about dropping his cell phone." However, it is telling that Howell himself did not characterize this response as suspicious in his testimony. Instead, Howell described Shoenberger as "cooperative," "went with the program, listened to my commands," and "responsive."

Case No. 2021-A-0011

{¶25} Howell testified that he did not see anything in plain view in the vehicle. He did, however, testify that he performs a pat down "any time there's drugs, weapons, stuff like that involved, I always like to pat someone down * * * just for my protection and their protection." Although Howell made this general statement about his typical pat down practices, he did not point to any particular facts that justified his belief that Shoenberger himself was armed and presently dangerous.

{¶26} Howell went to the scene to investigate a possible overdose but found no evidence to corroborate the call. Shoenberger was alert, did not seem intoxicated, was cooperative, and answered all of Howell's questions. Howell did not testify that Shoenberger made any furtive movements or acted evasively. Unlike in *Luther, supra*, the totality of the circumstances in this case does not demonstrate a reasonable suspicion that Howell believed Shoenberger was armed and presently dangerous. Howell's pat down was an unreasonable search and a violation of Shoenberger's Constitutional rights. As a result of this illegal search, the evidence obtained from it must be excluded. *Adams*, 144 Ohio St.3d 429, at ¶ 181.

{¶27} As our decision on the *Terry* pat down is dispositive and requires the exclusion of the evidence obtained from it, the remaining assignments of error are moot. *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, 176 N.E.3d 720, ¶ 26. (An "assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court.").

Case No. 2021-A-0011

{¶28} Accordingly, appellant's conviction is reversed and the matter is remanded for further proceedings consistent with this opinion.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

Case No. 2021-A-0011